19-3339-cv
*Meimaris v. Royce, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of November, two thousand twenty-one.

PRESENT:
        JOSEPH F. BIANCO,
        MICHAEL H. PARK,
        WILLIAM J. NARDINI,
            *Circuit Judges*.

_____

Helen Meimaris, as Executrix and Legal
Representative of the Estate of Alkiviades
Meimaris,

            *Plaintiff-Appellant*,

The Estate of Alkiviades Meimaris, Helen Meimaris
as Executrix of the Estate of Alkiviades Meimaris,

            *Plaintiffs*,

            v.                                                      19-3339-cv

Joseph E. Royce, Tulio Prieto, Lawrence A.
Blatte, TBS Shipping Services Inc., Guardian
Navigation,

            *Defendants-Appellees*.[*]

_____

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

FOR PLAINTIFF-APPELLANT:        ALKISTIS MEIMARIS, Meimaris Law Group LLC, New York, NY.

FOR DEFENDANTS-APPELLEES
LAWRENCE BLATTE &
JOSEPH ROYCE:        ADAM RODRIGUEZ (William P. Harrington, *on the brief*), Bleakley Platt & Schmidt, LLP, White Plains, NY.

FOR DEFENDANT-APPELLEE
TBS SHIPPING SERVICES, INC.
& GUARDIAN NAVIGATION:        NOAH S. CZARNY (Mark D. Kotwick, *on the brief*), Seward & Kissel LLP, New York, NY.

FOR DEFENDANT-APPELLEE
TULIO PRIETO:        AARON M. BARHAM (A. Michael Furman, *on the brief*), Furman Kornfeld & Brennan LLP, New York, NY; Tulio R. Prieto, (James P. Rau *on the brief*), Cardillo & Corbett, New York, NY.

Appeal from a judgment and an order of the United States District Court for the Southern District of New York (Daniels, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court are **AFFIRMED**.

Plaintiff-Appellant Helen Meimaris ("Meimaris"), in her individual capacity and as executrix and legal representative of the Estate of her late husband, Captain Alkiviades Meimaris ("Captain Meimaris"), appeals from the September 25, 2019 judgment and order of the United States District Court for the Southern District of New York (Daniels, *J.*) dismissing the third amended complaint (the "TAC") pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Meimaris brought various claims under New York law against defendants-appellees Joseph E. Royce, Tulio Prieto, Lawrence Blatte, TBS Shipping Services, and Guardian Navigation,

alleging that the defendants fraudulently deprived Captain Meimaris of his ownership interests in TBS Commercial Group, a privately held shipping company, and TBS Shipping International, its publicly traded affiliate, in connection with the latter company's Chapter 11 bankruptcy reorganization.[1] On appeal, Meimaris challenges the dismissal of the TAC, arguing, *inter alia*, that the district court incorrectly concluded that: (1) Meimaris lacked standing to sue in her individual capacity; (2) the fifth cause of action ("Claim Five") charged only a previously dismissed defendant; (3) the remaining claims were time-barred under New York's applicable statute of limitations for fraud; and (4) granting Meimaris leave to amend the TAC would be futile. We assume the parties' familiarity with the underlying facts and the procedural history of the case, which we reference only as necessary to explain our decision to affirm.

## I. Standard of Review

We review *de novo* a district court's grant of a motion to dismiss pursuant to Rule 12(b)(1) or 12(b)(6), *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009), including the court's "interpretation and application of statutes of limitations," *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 245 (2d Cir. 2021). In conducting such review, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015); *accord Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)). However, we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation

---

[1] Meimaris initially also brought claims against defendant Jaime Leroux and later added Grupo Sedei and Tecnisea as defendants. Meimaris voluntarily dismissed all claims against these defendants on May 13, 2019.

3

marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. We likewise review *de novo* a district court's "denial of leave to amend on the ground that the proposed new complaint does not state a claim on which relief can be granted . . . ." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

## II.     Standing

Meimaris argues that the district court erred in concluding that she lacked standing to sue in her individual capacity. As discussed below, we agree with the district court.

To establish standing, a plaintiff must show "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff must allege "a personal stake in the outcome of the controversy" and "cannot rest [a] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). At the pleading stage, as here, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth*, 422 U.S. at 518).

Here, even assuming the truth of the allegations in the TAC, such allegations do not demonstrate that Meimaris has any individual interests that were infringed upon by the defendants. The TAC contains no allegations that Meimaris had any personal stake or any other business interests in TBS Commercial or TBS International, or that the defendants owed her any fiduciary duties that could have been breached. Instead, all of the interests allegedly infringed upon by the

4

defendants belonged to Captain Meimaris: Captain Meimaris was the sole holder of the shares at issue in each company, the only person allegedly denied a corporate business opportunity, the individual allegedly prevented from joining in the reorganization plan, and the only party allegedly forced out of TBS Commercial. *See, e.g.*, TAC ¶¶ 29, 71, 97, 113. As such, the TAC does not allege any facts demonstrating that Meimaris has a personal stake in the controversy.

Moreover, Meimaris does not have standing as an individual based upon her status as Captain Meimaris's wife or as the legal beneficiary of Captain Meimaris's estate, as she argues. Even assuming the TAC properly alleged that Meimaris inherited her husband's interests, a spouse does not have standing merely on the basis of her marital status to sue for an injury suffered by her spouse. *See Warth*, 422 U.S. at 499 ("[T]he plaintiff generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties."); *accord Leonhard v. United States*, 633 F.2d 599, 618 (2d Cir. 1980) (noting that family members did "not have standing to complain of abridgement" of the rights of another family member on that basis alone). Similarly, the beneficiary of an estate does not have an independent cause of action to sue for the testator's injury, and, thus, does not have individual standing on the sole basis of being a beneficiary. *See* N.J. Stat. Ann. § 2A:15-3 (permitting only "executors and administrators" to sue for a testator's injury); *accord Smith v. Whitaker*, 160 N.J. 221, 233 (1999) (noting that Section 2A:15-3 only provides a decedent's legal representatives, not their beneficiaries, with the right to bring suit for trespass against the decedent).[2]

---

[2] Although Meimaris's claims are brought under New York law, Meimaris's capacity to sue is governed by New Jersey law per Federal Rule of Civil Procedure 17(b). *See* Fed. R. Civ. P. 17(b)(1) (stating that, "for an individual who is not acting in a representative capacity," capacity to sue is determined "by the law of the individual's domicile"). In any event, New York has an analogous rule of law. *See, e.g.*, *Jackson v. Kessner*, 618 N.Y.S.2d 635, 637 (1st Dep't 1994) ("The legatees and beneficiaries [of the estate] have

Accordingly, we conclude that the district court correctly determined that Meimaris lacked standing to sue in her individual capacity. However, we proceed to analyze the claims Meimaris brought on behalf of the Estate.

### III.    Claim Five

Meimaris also argues that the district court erred in concluding that Claim Five was alleged only against former-defendant Jaime Leroux, as to whom Meimaris voluntarily dismissed all of her claims on May 13, 2019. We disagree. The district court correctly determined that Claim Five was not asserted against any defendant except Leroux.

It is plain from the structure of Claim Five, and the allegations contained therein, that it is asserted only against Leroux. In addition to the claim's caption in the TAC, which mentions only Leroux and no other defendants, the actions detailed in the claim are exclusively attributed to Leroux. *See* TAC ¶¶ 129–37. Other defendants are mentioned only twice: first, in a statement that Leroux knew about Royce and Blatte's other alleged misconduct, TAC ¶ 135, and second, in a conclusory statement that "Mr. Leroux and the other Defendants committed statutory fraud and common law fraud," TAC ¶ 138. Such allegations are insufficient to put the defendants (other than Leroux) on fair notice that claims were being asserted against them. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."). Accordingly, we agree with the district court that Claim Five should be construed as pertaining solely to Leroux, who is no longer a defendant in this case.

---

no independent cause of action either in their own right or in the right of the estate to recover estate property. . . . It is of no consequence that the plaintiff is the sole beneficiary of the estate." (internal citation and quotation marks omitted)).

In any event, even if Claim Five could be construed to include all of the remaining defendants, Meimaris's conclusory allegation that these defendants "committed . . . fraud" is insufficient to plead a plausible claim under Federal Rule of Civil Procedure 8(a), let alone under the heightened pleading standard for fraud under Rule 9(b). *See Iqbal*, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim under Rule 8(a)); *see also Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) ("[G]eneralized and conclusory allegations of fraudulent concealment do not satisfy the requirements of [Rule 9(b)].").   Therefore, even if Claim Five had been properly asserted against the remaining defendants, the allegations in Claim Five are insufficient to survive a motion to dismiss against any of those defendants.

## IV.     Statute of Limitations

Meimaris also challenges the district court's dismissal of the Estate's remaining claims as untimely.   As set forth below, we agree with the district court's thorough analysis that the remaining claims were time-barred by New York's applicable statute of limitations for fraud.

A statute of limitations defense can be decided on a Rule 12(b)(6) motion "if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).   Under New York law, a claim based on fraud must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."   N.Y. C.P.L.R. § 213(8); *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013).   A fraud claim accrues when "the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009)

7

(internal quotation marks omitted).

Here, Meimaris filed her action on May 21, 2018, asserting several causes of action based on various instances of alleged misconduct that occurred between 2008 and 2012. Claim One alleges that defendants Royce and Blatte committed "fraud and fraudulently breached their fiduciary duty" to Captain Meimaris by usurping a corporate opportunity from him in 2011. TAC ¶¶ 63, 71. Claim Two alleges that, in May 2008, defendants Royce and Blatte committed fraud by "inducing Captain Memairis to not sell his shares" in TBS International. TAC ¶¶ 81–86. The remaining claims aver misconduct in connection with the bank reorganization plan: Claim Three alleges Royce and Blatte breached their fiduciary duty by "fraudulently push[ing]" Captain Meimaris out of the reorganization deal, TAC ¶¶ 96–100; Claim Four alleges that Royce, Blatte, and Prieto fraudulently took Captain Meimaris's shares in TBS Commercial Group in connection with that deal, TAC ¶¶ 105–13; Claim Six alleges that Royce, Blatte, and Prieto "conspired to deprive Captain Meimaris of his interest in TBS Commercial Group" in order to bring about the reorganization, TAC ¶¶ 142–46, 153–55; and Claim Seven alleges that TBS Shipping Services was "aware of" and thereby aided and abetted the other defendants' fraud, TAC ¶¶ 161–63. Any claims alleging misconduct in connection with the reorganization plan were necessarily complete, and thus began accruing, by either the date the plan was approved by the bankruptcy court (March 29, 2012) or, at the latest, by the date the plan went into effect (April 12, 2012).[3] Thus, the TAC

---

[3] Meimaris argues that the district court made an "unfounded and arbitrary assumption that [the claims] accrued on April 12, 2012, the effective date of the Plan of reorganization in the Bankruptcy Court," Appellant's Br. at 24, and contends that (if the limitations period was not tolled) the date the claims accrued was June 29, 2012, when the bankruptcy court proceeding closed. We disagree. First, as Magistrate Judge Moses noted, the June 29, 2012, date signifies only the administrative close of the bankruptcy docket, not an "act" performed by any defendant. Not only was much of the alleged conduct complete years before April 2012, but the TAC itself identifies February 2012—when "the Reorganization Plan was introduced to the Bankruptcy Court"—as the event that injured Captain Meimaris. TAC ¶¶ 96–97.

alleges various instances of misconduct between May 2008 and April 2012, all of which took place more than six years before May 21, 2018, when Meimaris commenced this action.

Meimaris also contends that the April 12, 2012, date was not dispositive because the district court ignored her allegation "that Captain Meimaris only learned in the summer of 2013 that his shares in TBS Commercial Group no longer existed." Appellant's Br. at 25 (internal quotation marks and alteration omitted). However, Meimaris conflates when the alleged bad act occurred (2012 or earlier) with when the alleged bad act was discovered (2013). Although the New York statute of limitations for fraud allows accrual from either the act itself or from the date of discovery, the limitations period for the latter is only two years. *See* N.Y. C.P.L.R. § 213(8). To the extent that Captain Meimaris only learned of the conduct in 2013, as indicated by his November 30, 2013, affidavit filed with Meimaris's opposition to the defendants' motions to dismiss, any discovery-based claim accruing from that point still would have expired in 2015, long before the lawsuit was commenced in May 2018.

Accordingly, all of Meimaris's claims are time-barred under the applicable statute of limitations. To the extent that Meimaris argues in the alternative that the untimeliness of these claims is cured by tolling under the continuing wrong doctrine or under *Burnett v. New York Century Railroad Co.*, 380 U.S 424 (1965), we are unpersuaded and address each tolling argument in turn.

***Continuing Wrong Doctrine.*** Meimaris argues that her claims are timely under the continuing wrong doctrine, asserting that the TAC alleges "a series of independent distinct wrongs

---

Further, apart from the already-dismissed Claim Five, the TAC alleges no additional "wrongful acts" occurring after that date. Far from being arbitrary, the district court's determination that April 12, 2012, was the latest possible date of accrual was generous based upon the facts alleged.

. . . including a last wrongful act alleged to have occurred in 2014—well within the six-year statute of limitations." Appellant's Br. at 18. The district court correctly noted that this doctrine does not apply here.

The continuing wrong doctrine "is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Affordable Hous. Assocs., Inc. v. Town of Brookhaven*, 54 N.Y.S.3d 122, 126 (2d Dep't 2017) (internal quotation marks omitted). The doctrine allows only tolling "predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct." *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 122 (2d Cir. 2020) (quoting *Salomon v. Town of Wallkill*, 107 N.Y.S.3d 420, 422 (2d Dep't 2019)). When the doctrine applies, the defendant is liable only for the wrongs committed during the applicable limitations period. *See, e.g.*, *Henry v. Bank of Am.*, 48 N.Y.S.3d 67, 69–70 (1st Dep't 2017).

Here, Meimaris fails to demonstrate that the continuing wrong doctrine saves her untimely claims. Even if Meimaris plausibly alleged a common series of fraud that could be tolled to a last wrongful act, that last wrongful act, as discussed above, occurred no later than April 2012, still outside the six-year limitations period. Moreover, although Meimaris argues that the 2014 conduct alleged in Claim Five qualifies as the relevant last wrongful act, that claim, also discussed above, was not brought against the remaining defendants (and, in any event, is insufficiently pled against them). Accordingly, we agree with the district court that the continuing wrong doctrine is inapplicable here.

***Burnett Tolling.*** Meimaris also argues that her claims were tolled during the duration of the prior state court proceeding, which lasted from April 3, 2018, to May 14, 2018. Although this

10

argument was not asserted in the district court and we are not required to consider an issue raised for the first time on appeal, *Mago Int'l v. LHB AG*, 833 F.3d 270, 274 (2d Cir. 2016), we shall briefly explain why this new argument also fails.

As an initial matter, we have held that, "[i]n diversity cases, state statutes of limitations govern the timeliness of state law claims, and state law determines the related questions of what events serve to commence an action and to toll the statute of limitations." *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) (internal quotation marks omitted). Thus, federal courts exercising diversity jurisdiction over New York state law claims are bound to apply New York's saving statute, N.Y. C.P.L.R. § 205(a), to determine the effect (if any) of a plaintiff's filing and voluntary discontinuance of a state law action prior to commencing an action in federal court based on the same transaction or occurrence. *Diffley*, 921 F.2d at 423. And Section 205(a) makes clear that where, as here, a plaintiff voluntarily discontinues a claim, Section 205(a) has no tolling effect. N.Y. C.P.L.R. § 205(a) ("If an action is timely commenced and is terminated *in any other manner than by a voluntary discontinuance*, . . . the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period." (emphasis added)); *see also EB Brands Holdings, Inc. v. McGladrey, LLP*, 62 N.Y.S.3d 134, 136 (2d Dep't 2017) ("The plaintiff's contention that the statute of limitations was extended pursuant to CPLR 205(a) is without merit, as the time extension provisions of CPLR 205(a) are inapplicable when, as here, a prior, timely commenced action was terminated by

11

voluntary discontinuance."). As a result, Section 205(a) is dispositive of Meimaris's tolling argument and *Burnett*—a case concerning the tolling of a federal cause of action based on concerns particular to the Federal Employers' Liability Act ("FELA")—simply does not apply. *See Burnett*, 380 U.S. at 433 ("[T]he period of time within which an action may be commenced is a material element in [FELA's] uniformity of operation which Congress would not wish to be destroyed by the varying provisions of the State statutes of limitation. The incorporation of variant state saving statutes would defeat the aim of a federal limitation provision designed to produce national uniformity." (internal quotation marks, alterations, and citation omitted)); *see also Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 466–67 & n.12 (1975) (holding that *Burnett* tolling did not apply to toll the period to file a claim under 42 U.S.C. § 1981, where the limitations period for that claim was governed by reference to state law, because in *Burnett* "there was a substantial body of relevant federal procedural law to guide the decision to toll [FELA's federal] limitation period, and significant underlying federal policy that would have conflicted with a decision not to suspend the running of the statute").

Accordingly, we conclude the district court properly dismissed the Estate's claims as time-barred.

## V. <u>Leave to Amend</u>

Finally, Meimaris argues that she should have been granted leave to amend the TAC. The district court properly concluded that granting such leave would have been futile.

Federal Rule of Civil Procedure 15(a) provides that a court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the

12

opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted). Amendment is futile when the proposed amended complaint would "fail[] to state a claim on which relief can be granted." *Anderson News, L.L.C.*, 680 F.3d at 185; *see Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (denying leave to amend when "additional information [could] not cure the complaint").

Here, the deficiencies in the TAC are incurable. Meimaris has filed a total of six versions of her complaint in state and federal court, including an amended pleading submitted after the defendants filed their motion to dismiss, and there is no indication that there are any additional allegations that could overcome Meimaris's lack of individual standing or make the Estate's claims timely. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (finding denial of leave to amend proper because "[p]laintiffs were accorded four opportunities to plead their claims" and because "the deficiencies in their federal claims are fundamental"). Indeed, on appeal, Meimaris does not provide any substantive reasons why amendment would not be futile, instead relying on her primary arguments that the district court incorrectly applied the statute of limitations and erred in its standing analysis. As we find these arguments to be without merit, we conclude that the district court properly denied leave to amend as futile.

*     *     *

We have considered Meimaris's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13